IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAMES HOPKINS,<br><br>               Plaintiff,<br><br>   vs.<br><br>SUBARU TELESCOPE NATIONAL ASTRONOMICAL OBSERVATORY OF JAPAN,<br><br>               Defendant. | Civ. No. 19-00064 JMS-KJM<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, ECF NO. 19 |

# ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, ECF NO. 19

## I. INTRODUCTION

Defendant "Subaru Telescope National Astronomical Observatory of Japan," officially known as the "National Astronomical Observatory of Japan," ("Defendant" or "the NAOJ"), moves to dismiss the Complaint filed by pro se Plaintiff James Hopkins ("Plaintiff" or "Hopkins"). ECF No. 19. Specifically, the NAOJ moves (1) pursuant to Federal Rule of Civil Procedure 12(b)(5) based on insufficient service of process, and (2) under Rule 12(b)(1) for lack of subject-matter jurisdiction arguing that it is immune from suit under the Foreign Sovereign

Immunities Act ("FSIA"). ECF No. 19. Based on the following, the motion is GRANTED under Rule 12(b)(5). The action is DISMISSED without prejudice.[1]

## II. **BACKGROUND**

Because the motion does not concern the merits of Plaintiff's claims (which sound in wrongful termination of employment), the court discusses the allegations of the Complaint only as necessary to understand the context of the present motion. Rather, the court focuses on the status of the NAOJ, and Plaintiff's attempts to serve it with the Complaint. In this regard, the court may consider evidence as needed to resolve the Rule 12(b)(5) motion. *See, e.g.*, *Ketchmark v. Brown-Williamson Tobacco Corp.*, 2018 WL 3451450, at *2 (D. Haw. July 17, 2018) ("In assessing the sufficiency of process [under Rule 12(b)(5)] . . . courts may weigh the evidence and resolve disputed issues of fact in accordance with Rule 12(d).") (citing 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (3d ed. 2005)); *Yamano v. Hawaii Judiciary*, 2018 WL 3431921, at *3 (D. Haw. July 16, 2018) (same).

---

[1] Given that the court dismisses the action for insufficient service and, thus, lack of personal jurisdiction, it does not reach whether, under Rule 12(b)(1), the NAOJ has sovereign immunity (or whether any exceptions to sovereign immunity might apply). *See, e.g.*, *Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 34 & n.4 (D.D.C. 2014) (dismissing complaint without prejudice for lack of service and declining to reach "the second prong of the FSIA inquiry, namely, whether any of the exceptions to a sovereign's absolute immunity apply").

The record establishes (and Plaintiff does not dispute) that the NAOJ is a part of the government of Japan. *See* Masayo Nakajima ("Nakajima") Decl. ¶ 2, ECF No. 19-2; *see also* ECF No. 26 at PageID #193. It was previously "under the jurisdiction of the Japan Ministry of Education, Culture, Sports, Sciences and Technology," and was later "incorporated as the Inter-University Research Institute Corporation, National Institutes of Natural Sciences, National Astronomical Observatory of Japan on April 1, 2004." Nakajima Decl. ¶ 2, ECF No. 19-2. The NAOJ's primary source of funding for "management and facilities maintenance" comes from that Japan Ministry. *Id.* "[The] NAOJ is an inter-university research facility for carrying out astronomy research at the national level. It builds and operates first class research facilities for researchers throughout Japan and facilitates international collaboration." *Subaru Telescope*, https://subarutelescope.org/NAOJ/NAOJ.html (last visited Nov. 7, 2019). Its primary mission includes "develop[ing] and construct[ing] large-scale cutting-edge astronomical research facilities and promot[ing] their open access aiming to expand our intellectual horizons," and "contribut[ing] to the development of astronomy as a world leading research institute by making the best use of a wide variety of large-scale facilities." *NAOJ's Philosophy*, https://www.nao.ac.jp/en/

about-naoj/organization/philosophy.html (last visited Nov. 7, 2019).[2]

The evidence also establishes that the NAOJ—with assistance from the Research Corporation of the University of Hawaii ("RCUH") through a Master Agreement for the RCUH to provide certain administrative services—operates the Subaru Telescope, which is "an 8.2-meter optical-infrared telescope at the summit of Mauna Kea, Hawaii." *Subaru Telescope*, https://subarutelescope.org/index.html (last visited Nov. 7, 2019); *see also* ECF No. 19-3 (Master Agreement between the NAOJ and RCUH). Under the Master Agreement, "Project Employees hired by RCUH on behalf of NAOJ [are] RCUH employees." ECF No. 19-3 at PageID #161.

According to Plaintiff's charge of discrimination filed with the Hawaii Civil Rights Commission, Plaintiff was hired in 1999 as a "motor pool transportation technician" with the NAOJ facility in Hilo, Hawaii. ECF No. 1-1 at PageID #5. He was terminated in 2017 "for reasons that [Plaintiff] believe[s] to be discriminatory in nature." *Id.* After the Equal Employment Opportunity Commission ("EEOC") investigated and did not find a violation of the charges, the

---

[2] Nakajima, who is "Head of Human Resources and Public Information and Outreach for Subaru Telescope," attests that "NAOJ's website provides accurate information about its history, philosophy, purpose and activities." ECF No. 19-2 at PageID #158-59.

EEOC issued a right-to-sue letter on October 29, 2018. ECF No. 1-1 at PageID #7. Plaintiff filed this suit against the NAOJ on January 27, 2019. ECF No. 1.[3]

On June 16, 2019, Plaintiff attempted to serve the Complaint on the NAOJ by having a process server leave a copy of it with Nakajima at the NAOJ office in Hilo. *See* ECF No. 19-2 at PageID #159; *see also* ECF No. 18. It is undisputed that (1) Nakajima is not "authorized by appointment or by law to receive service of process on behalf of NAOJ," ECF No. 19-2 at PageID #159; (2) Nakajima was not provided with a Japanese translation of the documents, *id.*; and (3) there was no "special arrangement between Hopkins and NAOJ for NAOJ to accept service of process," *id.*

On July 10, 2019, the NAOJ filed its Motion to Dismiss. ECF No. 19. Plaintiff failed to file an Opposition, but he appeared by telephone at a hearing on the Motion on September 23, 2019, and the court gave him another opportunity to file a written Opposition. *See* ECF No. 25. Plaintiff then filed an Opposition on

---

[3] The same day, Plaintiff filed a separate employment discrimination suit in this court against RCUH based on the same events at issue in this suit. *See Hopkins v. Research Corp. of the Univ. of Hawaii*, Civ. No. 19-00054 JMS-KJM. That suit remains pending.

September 30, 2019. ECF No. 26.[4] The NAOJ filed its Reply on October 7, 2019. ECF No. 27.

### III. **STANDARD OF REVIEW**

Rule 12(b)(5) of the Federal Rules of Civil Procedure authorizes dismissing a complaint based on insufficient service of process because "[f]ederal courts cannot exercise personal jurisdiction over a defendant without proper service of process." *Yamano*, 2018 WL 3431921, at *3 (citing *Omni Capital Int'l Ltd v. Wolff & Co.*, 484 U.S. 97, 104 (1987)).

"To determine whether service of process was proper, a court looks to the requirements of Rule 4 of the Federal Rules of Civil Procedure." *Id.* (citations omitted). Although "Rule 4 is a flexible rule that should be liberally construed," *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (citation omitted), "neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without 'substantial compliance with Rule 4,'" *id.* (quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under

---

[4] Plaintiff, who lives on Hawaii Island, post-marked his Opposition on September 27, 2019—one day late—but the court exercises its discretion to accept the late filing, given Plaintiff's pro se status and a lack of prejudice to Defendant.

6

Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (citations omitted).

## IV. **DISCUSSION**

### A. Service Under 28 U.S.C. § 1608(a) is Required

Rule 4(j) provides that "[a] foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608." "If a plaintiff fails to perfect service as required under the applicable provision of § 1608, the court lacks personal jurisdiction over the foreign entity pursuant to 28 U.S.C. § 1330(b)[.]" *Howe*, 68 F. Supp. 3d at 32; *see also* 28 U.S.C. § 1330(b) ("Personal jurisdiction over a foreign state shall exist . . . where service has been made under section 1608 of this title."). In turn, section 1608 "provides two avenues to serve a foreign sovereign, depending on the type of entity to be served." *Howe*, 68 F. Supp. 3d at 31. "A 'foreign state or [its] political subdivision' must be served pursuant to 28 U.S.C. § 1608(a), while 'an agency or instrumentality of a foreign state' must be served pursuant to 28 U.S.C. § 1608(b)." *Id.*

The court utilizes a "core functions" test to decide which section applies—if the foreign entity's "core functions" are predominantly governmental, then § 1608(a) applies, but if they are predominantly commercial, then § 1608(b) applies. *See, e.g.*, *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151-

53 (D.C. Cir. 1994); *Magness v. Russian Fed'n*, 247 F.3d 609, 613-14 & n.7 (5th Cir. 2001); *Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 495 F.3d 1024, 1034 (9th Cir. 2007) (adopting "core functions" test for deciding whether an entity is a "foreign state" or an "agency or instrumentality" under 28 U.S.C. § 1610), *rev'd on other grounds sub nom. Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366 (2009).

Factors to examine include "the structure and function of an entity." *NML Capital., Ltd. v. Space Expl. Techs. Corp.*, 2015 WL 1334291, at *6 (C.D. Cal. Mar. 6, 2015). For example, "waging war, engaging in foreign diplomacy, and conducting the affairs of state are quintessential government functions." *Id.* at *5. And where an entity's "primary function is development and execution of a national space program," it is "more similar to a government entity's [core function] than a commercial enterprise's." *Id.* at *6. "[N]ational programs are usually, by definition, governmental." *Id.* "[S]pace exploration and research are traditionally associated with governments (even with the advance of private space corporations in recent years)." *Id.*; *cf. Taylor v. Kingdom of Sweden*, 2019 WL 3536599, at *3-4 (D.D.C. Aug. 2, 2019) (applying core functions test to find the Swedish National Museums of World Culture to be part of Swedish government

8

for FSIA purposes, where functions included "establishing and fostering educational, informational, and cultural exchanges with foreign countries, universities, non-governmental organizations").

"In contrast, the core functions of entities acting as private companies are predominantly commercial." *Space Expl. Techs.*, 2015 WL 1334291, at *5. An example is a national energy company whose "primary function is to sell natural gas at low prices." *NML Capital, Ltd. v. Republic of Argentina*, 892 F. Supp. 2d 530, 533 (S.D.N.Y. 2012). Or, "a public depository that operates much like a bank" is predominantly commercial. *Space Expl. Techs.*, 2015 WL 1334291, at *5 (citing *NXP Semiconductors USA, Inc. v. Brevets*, 2014 WL 4621017, at *8 (N.D. Cal. Sept. 15, 2014)).

Applying the test here, the NAOJ's core functions are predominantly governmental. It was formally under the jurisdiction of a Japanese Ministry, and is now part of Japan's National Institutes of Natural Sciences. Its funding for "management and facilities maintenance" comes from the Japanese government. Its purpose includes "carrying out astronomy research at the national level," by operating Japanese and international facilities and "facilitat[ing] international collaboration." *Subaru Telescope*, https://subarutelescope.org/NAOJ/NAOJ.html. In this regard, its core functions are analogous (1) to a national space program, as

analyzed in *Space Exploration Technologies*, 2015 WL 1334291, at *6; or (2) to a national museum with a mission that includes "establishing and fostering educational, informational, and cultural exchanges with foreign countries, universities, nongovernmental organization, and the public," and "promot[ing] knowledge sharing with educational institutions," as analyzed in *Kingdom of Sweden*, 2019 WL 3536599, at *3. Moreover, the court was presented with no evidence that any of NAOJ's core functions are commercial in nature.[5] Section 1608(a), not (b), applies.

**B.      Plaintiff Failed to Comply with § 1608(a)**

Section 1608(a) allows service by four basic methods: (1) "special arrangement for service between the plaintiff and the foreign state," (2) "delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents," (3) sending a copy of documents "together with a translation of each into the official language of the foreign state . . . to the head of the ministry of foreign affairs of the foreign state concerned," or (4) by sending two copies of documents "together with a translation

---

[5] Plaintiff's Opposition admits that the NAOJ's core functions are "political," but appears to argue—without any evidence—that the Subaru Telescope is commercial because it is "not attached directly to Japans [sic] government," and is operated by RCUH. ECF No. 26 at PageID #194. This argument is not persuasive. Plaintiff cannot sue the Subaru Telescope itself, and he already has a separate lawsuit against RCUH. The question here is whether the core functions of the NAOJ are primarily governmental for purposes of service under § 1608.

of each into the official language . . . to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services." 28 U.S.C. § 1608(a)(1)-(4). "The four forms of service are listed in descending order of preference." *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1129 n.4 (9th Cir. 2010). This means that "a plaintiff must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Opati v. Republic of Sudan*, 978 F. Supp. 2d 65, 67 (D.D.C. 2013). And "strict adherence to the terms of § 1608(a) is required." *Transaero*, 30 F.3d at 154; *see also Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015).

The uncontested record establishes that Plaintiff failed to meet any terms of section 1608(a). Plaintiff has no evidence of a "special arrangement" between Plaintiff and the NAOJ, or that he complied with provisions for service under an international convention (such as the Hague Convention). He has not established that Japanese translations of documents were "addressed and dispatched by the clerk of the court to the head of ministry of foreign affairs" of Japan. 28 U.S.C. § 1608(a)(4). Nor does he have proof that translated documents were directed "to the Secretary of State in Washington, [D.C.], to the attention of the Director of Special Consular Services." *Id.* Plaintiff's attempts at service by

11

leaving documents directed to Nakajima at the NAOJ Hilo office are insufficient—Nakajima is not authorized to accept service on behalf of the NAOJ, and Nakajima's declaration affirmatively establishes that there was no special arrangement for service and that those documents were not translated into Japanese.[6]

Given insufficient service of process, under 28 U.S.C. § 1330(b), the court lacks personal jurisdiction over the NAOJ. *See, e.g.*, *Kumar v. Republic of Sudan*, 880 F.3d 144, 160 (4th Cir. 2018) ("Because the attempted service of process in this case did not comply with the FSIA's statutory requirements, the district court lacked personal jurisdiction over Sudan[.]"); *Howe*, 68 F. Supp. 3d at 32 (same).

## C. The Court Dismisses the Action without Prejudice

If service of process is insufficient, the district court has discretion to dismiss an action or quash the service that has been made. *See S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006); *see also Ketchmark*, 2018 WL 3451450, at *2 ("If a court finds process or service of process insufficient, it may dismiss the action or retain the case but quash the service that was made on

---

[6] Moreover, for those reasons (i.e., no authorization to accept service on behalf of the NAOJ, no special arrangement for service, no Japanese translation), Plaintiff also did not fulfill section 1608(b)'s requirements, even if that section would apply.

the defendant.") (citation omitted).  Courts, however, are generally reluctant to dismiss a complaint on these grounds "when there is a possibility that effective service will be completed . . . inasmuch as the dismissal would be without prejudice and probably would lead to the reinstitution of the suit by the plaintiff." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1354 at 350-51 (3d ed. 2005).[7]

        Here, rather than simply dismissing the complaint and allowing Plaintiff another opportunity to attempt to serve the NAOJ through proper means, the court will dismiss the action without prejudice.  As noted above, Plaintiff already has a pending suit in this court against the RCUH, based on the same facts at issue in the present action against the NAOJ.  The record also appears to indicate that, under the Master Agreement, the RCUH—not the NAOJ—was Plaintiff's employer and thus is the more appropriate defendant.  *See* Civ. No. 19-00054 JMS-KJM (D. Haw. filed Jan. 27, 2019).  And in his Opposition, Plaintiff asks the court to deny the motion, in part, "so that [he has] a chance to combine this case with [Civ. No. 1900054 JMS-KJM]."  ECF No. 26 at PageID #195; *see also* ECF No. 9

---

[7] Under Rule 4(m), if a defendant is not served with the complaint within 90 days of filing, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specific time."  By its terms, however, the 90-day time limit "does not apply to service in a foreign country under . . . Rule 4(j)(1)," which applies here.

13

at PageID #87 (Plaintiff's initial Rule 16 Statement stating "[r]equest to combine this complaint . . . with complant [sic] case number: CV 19 00054 JMS KJM").

Given this posture, as a matter of judicial economy, the court will dismiss the present action without prejudice and close the case file. If Plaintiff believes he has a viable cause of action against the NAOJ or its employees, he may pursue such relief in Civ. No. 19-00054 JMS-KJM. He must do so by filing an appropriate motion under Federal Rule of Civil Procedure 15, seeking to amend the complaint in Civ. No. 19-00054 JMS-KJM (and, if allowed to proceed, by proper service of any amended complaint against the NAOJ under 28 U.S.C. § 1608(a)). Alternatively, he may choose to continue with Civ. No. 19-00054 JMS-KJM against the RCUH only.

///

///

///

///

///

///

///

///

## V. **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 19, is GRANTED under Rule 12(b)(5). The action is DISMISSED without prejudice. The Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 7, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Hopkins v. Subaru Telescope Nat'l Astronomical Observatory of Japan*, Civ. No. 19-00064 JMS-KJM, Order Granting Defendant's Motion to Dismiss, ECF No. 19

15